FLEET LEASING, INC., an Oregon corporation d/b/a Jubitz Truck Stop, Petitioner,

v.

The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, State of Colorado, and the Honorable Roger Cisneros, one of the Judges thereof, Respondents.

No. 82SA197.

Supreme Court of Colorado, En Banc.

Aug. 16, 1982.

**1076**

Wood, Ris & Hames, P. C., Jeffrey J. Cowman, Denver, for petitioner.

Stuart L. Boulter, P. C., Roger W. Westlund, Denver, for respondents.

QUINN, Justice.

In this original proceeding under C.A.R. 21 the petitioner, Fleet Leasing, Inc., an Oregon corporation doing business as Jubitz Truck Stop (Jubitz), seeks relief in the nature of prohibition on the ground that the respondent, the District Court of the City and County of Denver, exceeded its jurisdiction in violation of due process of law by

exercising *in personam* jurisdiction pursuant to the Colorado Long Arm Statute for the alleged commission of a tortious act within the state of Colorado by Jubitz. Section 13–1–124(1)(b), C.R.S.1973. Because we conclude that the exercise of jurisdiction over Jubitz does not comport with due process of law, we now make the rule absolute.

I.

On February 12, 1981, a semi-trailer truck driven by Jerry Strom went out of control and turned over on Interstate Highway 70 in Jefferson County, Colorado. Strom, his wife, and his son, all of whom were Colorado residents, were injured in the accident and treated at St. Anthony's Hospital in Denver, Colorado. On September 12, 1981, Strom filed a suit in a California court against various defendants, including Jubitz.[1] The complaint alleged, *inter alia*, that a 1972 three-axle truck-tractor, bearing Oregon license number T411743, and a 1975 tractor were left at Jubitz's service station in Portland, Oregon on various dates in the latter part of 1980 for the purpose of inspection and repair of the brake system, that Jubitz negligently inspected and repaired the brake system, and that Jubitz's negligence caused the truck to go out of control and overturn on Interstate Highway 70 in Jefferson County, Colorado on February 12, 1981, thereby resulting in injuries to Strom, his wife and his child. Strom sought general and special damages including hospital and medical expenses incurred for care at St. Anthony's Hospital. Jubitz voluntarily submitted to the jurisdiction of the California court. St. Anthony's Hospital thereafter filed a statutory lien for $18,703.72 on any judgment

1. In the California action Strom sued, in addition to Jubitz, Madeline and Justin Coffey, doing business as Coffey's Trucking in San Bernardino, California, on the basis that, as lessees of the semi-trailer truck, they negligently entrusted it to Strom while it was in a defective and dangerous condition and that they expressly and impliedly warranted the unit as safe. Also named as defendants were Walter and Everett Frederick, doing business as Aurora

Pacific Leasing in Aurora, Oregon. The complaint alleged that the Fredericks were the owners and lessors of the semi-trailer truck and negligently leased the unit in a dangerous and defective condition to Coffey's Trucking, knowing that Coffey's Trucking would entrust it to members of the public such as Strom, and that they expressly and impliedly warranted the unit as safe.

that might be awarded Strom in the California action for services it had rendered to him and the other members of his family.[2]

In October 1981 St. Anthony Hospital Systems, Inc. (St. Anthony's Hospital), filed a separate suit in Denver District Court against Jerry and Phyllis Strom and all the named defendants in the California action, including Jubitz.[3] St. Anthony's Hospital sought money damages for payment of the medical services rendered to the Stroms as a result of the accident on February 12, 1981. The complaint alleged, in pertinent part, as follows: that Jubitz was located in Portland, Oregon, and was engaged in the business of refueling and servicing semi-trailer trucks; that Jubitz negligently repaired the brakes on the semi-trailer truck during 1980; that on February 12, 1981 Jerry Strom was driving the semi-trailer truck in Jefferson County, Colorado, and was involved in a collision which resulted in necessary medical services being rendered by St. Anthony's Hospital to Jerry Strom, his wife, Phyllis Strom, and his son, Robert Strom; and that the negligent repair of the

brakes by Jubitz was the direct and proximate cause of the unpaid medical services which St. Anthony's Hospital claimed as damages.[4] St. Anthony's Hospital served a copy of the summons and complaint upon Jubitz's registered agent in Portland, Oregon.

Jubitz filed a motion to dismiss for lack of *in personam* jurisdiction and supported the motion with an affidavit of its president, H. Abbott Lawrence III. The affidavit alleged that Jubitz carries on no activities, performs no services, serves no patrons, neither directly nor indirectly attempts to serve markets in Colorado, and that it has not purposefully availed itself of the privilege of conducting activities within Colorado.

■ During the hearing on the motion to dismiss, St. Anthony's Hospital conceded that Jubitz's sole contact with Colorado was its allegedly negligent repair of the brakes on the truck driven by Jerry Strom and that it could not be proven that Jubitz had conducted any other activity in the state.[5]

2. Section 38–27–101, C.R.S.1973, provides in part:

"Every hospital duly licensed by the department of health ... which furnishes services to any person injured as the result of the negligence or other wrongful acts of another person and not covered by the provisions of the 'Workmen's Compensation Act of Colorado' shall, subject to the provisions of this article, have a lien for all reasonable and necessary charges for hospital care upon the net amount payable to such injured person, his heirs, assigns, or legal representatives out of the total amount of any recovery or sum had or collected, or to be collected, whether by judgment, settlement, or compromise, by such person, his heirs, or legal representatives as damages on account of such injuries.... The provisions of this article shall not apply to any hospital charges incurred subsequent to any such judgment, settlement, or compromise."

3. The complaint filed in the Denver District Court named as defendants, in addition to Jubitz, the following parties: Jerry, Phyllis and Robert Strom; Madeline Coffey, individually, and Justin and Madeline Coffey, d/b/a Coffey's Trucking; and Walter J. and Everett Fredericks, individually and d/b/a Aurora Pacific Leasing. The Stroms were sued for failure to pay hospital bills totaling $18,703.72. The Coffeys were sued for negligence and entrustment

of the semi-trailer truck to Jerry Strom. The claim against the Fredericks was based on their ownership of the truck and their negligence in leasing the defective vehicle to the Coffeys for subleasing to others. The record in this proceeding does not indicate what type of service was effected on these other defendants.

4. St. Anthony's Hospital filed a written stipulation which recited: "[The California] action arises out of the same factual circumstances which form the basis for plaintiff's claims for services rendered to Jerry Strom, Phyllis Strom and Robert Strom in the present action. It is further stipulated that St. Anthony Hospital Systems, Inc. is not a party to the above mentioned California action. St. Anthony Hospital Systems, Inc. has filed a statutory lien for the services rendered which may be satisfied out of any judgment obtained by Jerry Strom in the California action."

5. Evidence adduced at a hearing on a motion to dismiss may properly be considered in evaluating whether a prima facie showing of threshold jurisdiction has been established. *Le Manufacture Francaise v. District Court*, 620 P.2d 1040 (Colo.1980). *Waterval v. District Court*, 620 P.2d 5 (Colo.1980). It is similarly appropriate to consider concessions made by counsel in the course of such a hearing.

The district court denied the motion to dismiss, reasoning that it had jurisdiction because Jubitz reasonably could have foreseen that trucks which had been repaired in Oregon might cause injuries in other states including Colorado and that Jubitz was only one defendant among many named in this action. Jubitz thereafter petitioned this court for relief in the nature of prohibition, claiming that the district court's exercise of jurisdiction under the facts of this case violated due process of law under the United States and Colorado Constitutions. *U.S. Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25. We agree with Jubitz's claim.

## II.

■ Section 13–1–124(1)(b), C.R.S.1973, commonly known as the Long Arm Statute, provides as follows:

"Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from ... [t]he commission of a tortious act within this state ...." [6]

In enacting this statute the Colorado legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clauses of the United States and Colorado Constitutions. *E.g., Le Manufacture Francaise v. District Court,* 620 P.2d 1040 (Colo.1980); *Waterval v. District Court,* 620 P.2d 5 (Colo.1980); *Jenner and Block v. District Court,* 197 Colo. 184, 590 P.2d 964 (1979). A party asserting personal jurisdiction over a defendant under the Long Arm Statute must make a prima facie showing of threshold jurisdiction. *Id.* In determining whether a prima facie showing has been established, it is appropriate to consider the allegations of the complaint as well as any other evidence adduced at the

hearing on the motion to dismiss. *Le Manufacture Francaise v. District Court, supra; Waterval v. District Court, supra.* Threshold jurisdiction exists when it is demonstrated that tortious conduct initiated in another state ultimately caused injury in Colorado and that requiring a defense to the tort action in this state would be consistent with due process of law. *E.g., Le Manufacture Francaise v. District Court, supra; Jenner and Block v. District Court, supra; Granite States v. District Court,* 177 Colo. 42, 492 P.2d 624 (1972).

In this case the complaint specifically alleges that the injury to the Stroms occurred in Colorado as a result of Jubitz's negligent repair of the brakes in Oregon. This allegation constitutes a prima facie showing of a "tortious act" within this state for purposes of long arm jurisdiction. The critical inquiry, therefore, is whether the exercise of *in personam* jurisdiction on the basis of Jubitz's Oregon conduct comports with due process of law. For reasons hereafter stated we conclude that it does not.

### A.

■ Due process prohibits the exercise of *in personam* jurisdiction over a nonresident defendant unless the defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283, 132 A.L.R. 1357 (1940). Thus, the relationship between the defendant and the forum state must be such that it is reasonable to require the defendant to defend the particular suit which is brought there. *Id.* at 317, 66 S.Ct. at 158, 90 L.Ed. at 102. The "minimum contacts" standard protects the defendant against litigating in an inconvenient forum and, at the same time, ensures that the states do not overreach the limits

---

**6.** Neither St. Anthony's Hospital nor the district court relied on the transaction of business in Colorado, section 13–1–124(1)(a), C.R.S. 1973, as the source of jurisdiction over Jubitz.

Consequently, we concern ourselves only with the tort provisions of the Long Arm Statute, section 13–1–124(1)(b), C.R.S.1973, in our resolution of the jurisdictional dispute before us.

imposed upon them by their status as co-equal sovereigns in our federal system. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). Requiring as it does a determination of "reasonableness," the "minimum contacts" standard is not susceptible of mechanical application and, instead, involves an *ad hoc* analysis of the facts. In this area of the law the ultimate determination will rarely, if ever, be written in black and white. "The greys are dominant and even among them the shades are innumerable." *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 141 (1978), *quoting Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561, 1566 (1948).

 Sufficient contacts to support personal jurisdiction over a nonresident defendant may be found where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Hansen v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). By availing itself of this privilege the defendant "has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or if the risks are too great, severing its connection with the State." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. In this case it is undisputed that Jubitz has not purposefully availed itself of the privilege of conducting activities within the state of Colorado. As St. Anthony's Hospital concedes, Jubitz's sole contact with Colorado was its allegedly negligent repair in Oregon of the truck subsequently driven by Jerry Strom in Colorado. The jurisdictional issue thus turns on whether Jubitz's allegedly negligent repair work on the truck in Oregon was a sufficient connection with the state of Colorado to support Colorado's assertion of jurisdiction under the Long Arm Statute.

The Supreme Court's decision in *World-Wide Volkswagen, supra,* is central to our resolution of the jurisdictional issue involved in these proceedings. There the Supreme Court considered whether an Oklahoma court could exercise *in personam* jurisdiction over a nonresident motor vehicle dealer and its wholesale distributor in a products liability action, when the defendants' only connection with Oklahoma was the sale of an automobile in New York to New York residents who subsequently became involved in an accident in Oklahoma. The Court concluded that the nonresident defendants lacked the minimal contacts with Oklahoma sufficient to support an exercise of *in personam* jurisdiction:

> "[W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500.

Prior to the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson, supra,* we applied a similar line of reasoning in *Granite States v. District Court, supra.* Holding that a Colorado court could not constitutionally exercise jurisdiction under the Long Arm Statute over a nonresident corporate defendant which sold an allegedly defective car in New Hampshire to a plaintiff who drove the vehicle to Colorado and suffered injuries in an accident due to the

defective condition of the automobile, we there stated:

> "Granite States does not come within that class of defendants that can be held to answer in Colorado courts under the terms of our Long Arm Statute. Granite States is strictly in the business of selling and servicing Volkswagens in the State of New Hampshire. It has no authority to sell, and does not sell, ship, or otherwise deal in Volkswagens beyond the New Hampshire borders. As a consequence, we deem it inconsistent with the requirements of due process to subject it to the jurisdiction of other states in which an automobile, because of its mobility, might eventually be used." 177 Colo. at 44–45, 492 P.2d at 625.

■■■ When considered within the framework of *World-Wide Volkswagen* and *Granite States*, the repair work performed by Jubitz on the truck in Oregon is not sufficiently linked to the state of Colorado as to furnish a constitutional basis for the exercise of *in personam* jurisdiction over Jubitz by a Colorado court. Although the truck was serviced by Jubitz on more than one occasion during the latter part of 1981,

there is nothing about this activity which indicates that Jubitz was engaging in efforts to serve, directly or indirectly, a market for truck repairs broad enough to encompass the state of Colorado. Given the circumstances disclosed by this record, we cannot premise jurisdiction on the fortuitous circumstance that a single truck, which was repaired in Oregon and later subleased by California residents to another, happened to be the cause of injury to the sublessee and other occupants while the truck was being driven in Colorado some months after the repair work had been completed.[7]

### B.

■■■ St. Anthony's Hospital asserts that the exercise of *in personam* jurisdiction is proper because, by servicing trucks which travel on interstate highways, Jubitz reasonably should have foreseen that a negligently repaired truck may cause injury in some other state such as Colorado. The United States Supreme Court rejected a similar argument in *World-Wide Volkswagen Corp. v. Woodson, supra,* noting that foreseeability alone has never been a suffi-

---

**7.** St. Anthony's Hospital argues that the exercise of *in personam* jurisdiction over Jubitz in this case finds support in *Le Manufacture Francaise v. District Court,* 620 P.2d 1040 (Colo. 1980). In that case an American serviceman had his automobile equipped with Michelin tires which were manufactured in France by Michelin of France, a French corporation, and which were purchased by the serviceman from a German retailer. Thereafter the car was shipped to the United States and was transferred to a Colorado dealership in exchange for a new vehicle. The plaintiffs purchased the car from the Colorado dealer and were involved in an accident in Colorado, allegedly due to the defective condition of one of the tires. We held that although the particular tire in question did not arrive in Colorado through Michelin of France's ordinary marketing chain of distribution, Michelin of France nonetheless had sufficient contacts with Colorado to support the exercise of *in personam* jurisdiction:

> "The tires manufactured by Michelin of France which come into this state through more ordinary means do not differ significantly from the tire which failed. Tires of the same size and tread design are sold to Michelin of New York and Sears Roebuck & Company for resale in the United States, in-

cluding Colorado. Moreover, while the tire in question was sold in Germany, it had DOT markings stamped on it. It may be inferred from this fact that the subject tire was manufactured to meet the same quality standards as those tires normally sent to this country. Thus, the burden on Michelin of France to defend an action based upon this tire is no different than the burden which would arise from a defense of an action relating to any of the tires which reach Colorado as a result of Michelin of France's purposeful activity." 620 P.2d at 1047.

The factors determinative of jurisdiction in *Le Manufacture Francaise v. District Court, supra,* are not present here. Unlike that case, Jubitz did not purposefully avail itself of the Colorado market by offering products with the expectation that they would be purchased or used by consumers in Colorado. Apart from the repair of brakes on the truck which ultimately became involved in an accident on a Colorado highway, Jubitz has no other ties with the forum state. Moreover, in contrast to the plaintiffs in *Le Manufacture Francaise v. District Court, supra,* St. Anthony's Hospital has alternative forums in California and Oregon for its lawsuit against Jubitz.

cient benchmark for personal jurisdiction under the Due Process Clause:

"If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, see *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 507 (CA4 1956); a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey, *Reilly v. Phil Tolkan Pontiac, Inc.*, 372 F.Supp. 1205 (N.J. 1974); or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there, see *Uppgren v. Executive Aviation Services, Inc.*, 304 F.Supp. 165, 170–171 (Minn. 1969). Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel. We recently abandoned the outworn rule of *Harris v. Balk*, 198 U.S. 215 [25 S.Ct. 625, 49 L.Ed. 1023] (1905), that the interest of a creditor in a debt could be extinguished or otherwise affected by any State having transitory jurisdiction over the debtor. *Shaffer v. Heitner*, 433 U.S. 186 [97 S.Ct. 2569, 53 L.Ed.2d 683] (1977). Having interred the mechanical rule that a creditor's amenability to a *quasi in rem* action travels with his debtor, we are unwilling to endorse an analogous principle in the present case." 444 U.S. at 296, 100 S.Ct. at 566–67, 62 L.Ed.2d at 500–01.

Trucks, whether they travel on local roads or interstate highways, are no more inherently mobile than automobiles. For purposes of the "minimum contacts" requirement of due process, it is no more foreseeable that an Oregon truck serviced at a truck stop in that state will cause an accident in Colorado than it is that an automobile purchased in some other state will do so. Moreover, the truck in question bore an Oregon license and nothing of record indicates that Jubitz knew or should have anticipated that the truck was being serviced for travel in Colorado. We therefore conclude under the circumstances of this case that Jubitz's connection with Colorado is not such that it should have reasonably anticipated being haled into a court in this state as a consequence of its Oregon activity.

### C.

Finally, St. Anthony's Hospital claims that Colorado's exercise of jurisdiction over Jubitz is proper because suit in one location is necessary to minimize the expenditure of judicial resources. We do not agree. The convenience of the parties is not an adequate substitute for the constitutional requirement of minimum contacts. Simply stated, due process of law does not contemplate that a state may make a binding judgment *in personam* against a nonresident defendant merely out of considerations of convenience.

"Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 294, 100 S.Ct. at 565–66, 62 L.Ed.2d at 499–500.[8]

---

**8.** A consideration of the convenience of the parties and the conservation of judicial resources seems to mandate a result opposite to the one urged by St. Anthony's Hospital. The California forum already has jurisdiction over all the parties to this action. All named defendants in the instant case are residents of California or Oregon and have entered appearances before the California court. St. Anthony's Hospital has admitted that the Colorado action arises out of the same factual circumstances that form the basis of the California lawsuit. Additionally, St. Anthony's Hospital has filed a lien on any judgment that may be awarded in the California suit. Under these circumstances the convenience of the parties militates in favor of California jurisdiction and against the exercise of extraterritorial jurisdiction by the state of Colorado.

### III.

The district court's exercise of *in personam* jurisdiction over Jubitz under section 13–1–124(1)(b), C.R.S.1973, cannot be squared with the Due Process Clause of the United States and Colorado Constitutions. Accordingly, the rule to show cause is made absolute.